Joshua Jordan, PRO SE
3223 Twin Church Rd
Timmonsville, SC 29161
joshlegalstuff@gmail.com

OCT 31 '24 PM 12:04
RCV'D - USDC FLO SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOSHUA JORDAN<br><br>Plaintiff,<br><br>v.<br><br>PAYMENT SAVER, LLC<br>and<br>CASEY GRAHAM<br>Defendants. | Case No.: 4:24-cv-00890-JD-TER<br><br>**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

Plaintiff Joshua Jordan, proceeding pro se, respectfully submits these Objections to the Magistrate Judge's Report and Recommendation dated October 30, 2024 ("R&R").

## INTRODUCTION

The R&R's recommendation for dismissal rests upon a fundamental misapprehension of both the constitutional rights at stake and the practical impossibilities its implementation would create. While the R&R correctly notes the jurisdictional principles outlined in Saxon Fibers, LLC v. Wood, 118 Fed.Appx. 750 (4th Cir. 2005), this case presents extraordinary circumstances that implicate core constitutional protections and would create an insurmountable procedural barrier to the exercise of fundamental rights.

Three independent grounds require rejection of the R&R.

First, unlike the simple jurisdictional defect in Saxon Fibers, dismissal here would permanently extinguish substantive rights protected by the First Amendment's Petition Clause,

OBJECTIONS TO R AND R - 1

the Fifth Amendment's Due Process Clause, and the Fourteenth Amendment's Equal Protection guarantees.

Second, the Lanham Act claim at issue involves extensive interstate commerce affecting 729 customers across 43 states, with damages exceeding $18 million - a fundamentally different scenario from Saxon Fibers' private contract dispute.

Third, the complex corporate structure of Payment Saver LLC, involving multiple layers of LLCs and trust beneficiaries, made pre-filing citizenship discovery impossible, warranting equitable consideration.

Each ground independently implicates fundamental constitutional protections: petition rights under the First Amendment, due process under the Fifth Amendment, equal protection under the Fourteenth Amendment, and Congress's commerce power under Article I, Section 8.

## STANDARD OF REVIEW

This Court reviews de novo those portions of an R&R to which specific objections are made. 28 U.S.C. § 636(b)(1). This standard requires fresh consideration of dispositive legal issues. See United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992). Moreover, where procedural barriers threaten to permanently bar substantive rights, the Supreme Court requires 'heightened scrutiny' of such restrictions. See M.L.B. v. S.L.J., 519 U.S. 102, 106-07 (1996). The Court's review must be particularly searching where, as here, fundamental constitutional rights hang in the balance. See United States v. Raddatz, 447 U.S. 667, 683 (1980).

## ARGUMENT

## I. DISMISSAL WOULD VIOLATE FUNDAMENTAL CONSTITUTIONAL RIGHTS

The Supreme Court has long recognized that access to courts constitutes "one of the highest and most essential privileges of citizenship." Chambers v. Baltimore & Ohio R.R., 207 U.S. 142, 148 (1907). This right finds protection in multiple constitutional provisions, each of which would be violated by dismissal here.

### A. The First Amendment Right to Petition Bars Technical Forfeitures

The First Amendment's Petition Clause explicitly guarantees "the right of the people... to petition the Government for a redress of grievances." U.S. Const. amend. I. The Supreme Court has consistently held this right to be "among the most precious of the liberties safeguarded by the Bill of Rights." BE&K Construction Co. v. NLRB, 536 U.S. 516, 524-25 (2002). Unlike abstract rights, the Petition Clause requires "meaningful access to the courts," not merely theoretical availability. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).

The impossibility created by dismissal here would eviscerate this fundamental right. The claims arose from statements made February 22, 2022. The complaint was timely filed February 22, 2024. South Carolina law provides no savings statute, and dismissal now would permanently bar refiling. This creates exactly the type of technical forfeiture the Petition Clause prohibits. See M.L.B. v. S.L.J., 519 U.S. 102, 113 (1996) (access rights cannot be denied through procedural requirements beyond a party's control).

### B. Due Process Prohibits Arbitrary Deprivation of Property Rights

The Fifth Amendment's guarantee that no person shall be "deprived of life, liberty, or property, without due process of law" provides independent protection for timely-filed legal claims. U.S. Const. amend. V. The Supreme Court has specifically held that a cause of action is a species of property protected by due process. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982).

Here, Plaintiff's timely-filed claims, seeking redress for defamatory statements that reached approximately one million viewers and caused over $18 million in damages, constitute precisely the type of property interest that cannot be arbitrarily destroyed through procedural technicalities. The Logan Court specifically warned against systems that "arbitrarily prevent the vindication of a claim." Id. at 429. Dismissal here would create exactly such an arbitrary barrier.

## C. Equal Protection Prohibits Systemic Barriers to Court Access

The Fourteenth Amendment's guarantee of equal protection prohibits procedural systems that create arbitrary barriers based on litigant status. U.S. Const. amend. XIV. The Supreme Court has specifically recognized that access to courts cannot be limited by one's status as a pro se litigant. See Turner v. Rogers, 564 U.S. 431, 444-45 (2011).

The current situation creates an unconstitutional two-tier system of justice. Unlike represented parties with immediate electronic filing access, pro se litigants in South Carolina face systemic barriers including:

(1) prohibition from electronic filing access;

(2) multi-day delays in receiving court notices; and

(3) practical impossibility of same-day refiling given physical filing requirements.

These structural impediments create precisely the type of status-based discrimination the Equal Protection Clause forbids. See Griffin v. Illinois, 351 U.S. 12, 17 (1956) (condemning "wealth-based distinctions" in court access). The Supreme Court has long recognized the unique challenges faced by pro se litigants and the need for courts to ensure meaningful access. In Haines v. Kerner, 404 U.S. 519, 520 (1972), the Court held that pro se complaints must be held to 'less stringent standards than formal pleadings drafted by lawyers.' This principle acknowledges the inherent disadvantages faced by those without legal representation and emphasizes the court's duty to ensure fair access to justice. Recent scholarship and judicial decisions have increasingly recognized that meaningful court access requires accommodating these disparities, particularly in light of technological advancements that may further disadvantage pro se litigants.

## II. SAXON FIBERS IS FUNDAMENTALLY DISTINGUISHABLE

The R&R's reliance on Saxon Fibers overlooks critical distinctions that make its application here inappropriate. Unlike the simple jurisdictional defect in Saxon Fibers, this case presents extraordinary circumstances implicating fundamental rights and interstate commerce.

### A. Constitutional Rights Not Present in Saxon Fibers

Saxon Fibers involved no permanent deprivation of constitutional rights. There, the plaintiffs could refile their private contract claims without prejudice. Here, the combination of South Carolina's statute of limitations and pro se filing barriers would permanently extinguish substantive rights. The Supreme Court has specifically warned against such technical forfeitures.

See Mathews v. Diaz, 426 U.S. 67, 75 (1976) (allowing jurisdictional amendment where necessary to preserve substantive rights).

## B. Interstate Commerce Creates Federal Interest

Unlike Saxon Fibers' private contract dispute, this case involves widespread interstate commerce affecting 729 customers across 43 states. The allegedly false commercial speech reached approximately one million viewers and caused over $18 million in direct damages. These interstate implications create a strong federal interest in adjudication that was entirely absent in Saxon Fibers. See Wickard v. Filburn, 317 U.S. 111, 125 (1942) (holding that even local activities may be regulated by Congress if they have a substantial economic effect on interstate commerce). The scale and scope of the alleged defamatory statements in this case, reaching across state lines and affecting a significant number of consumers, clearly demonstrate a substantial effect on interstate commerce that warrants federal consideration. Furthermore, the Supreme Court has specifically recognized federal interest in regulating false commercial speech that affects interstate commerce. See United States v. Alvarez, 567 U.S. 709, 734 (2012) (Breyer, J., concurring) (noting constitutional protection is reduced when false statements cause monetary harm in commercial contexts).

## III. PRE-FILING DISCOVERY OF LLC CITIZENSHIP WAS IMPOSSIBLE

The complex ownership structure of Payment Saver LLC made pre-filing discovery of citizenship impossible through any reasonable diligence. Unlike the simple three-member LLC in Saxon Fibers, this case involves multiple layers of LLCs, including Arlington Private Equity

Fund V, LLC, which itself has a trust as a member whose beneficiaries' citizenship was undiscoverable before filing.

Courts consistently recognize that LLC citizenship creates unique challenges for pre-filing investigation. See Delay v. Rosenthal Collins Grp., LLC, 585 F.3d 1003, 1005 (6th Cir. 2009) (noting "peculiar difficulties" of determining LLC citizenship). These challenges become insurmountable when, as here, the structure involves non-public entities and trusts. The Fourth Circuit has specifically cautioned against demanding "impossible pre-filing investigations." Owens v. Stirling, 967 F.3d 396, 403 (4th Cir. 2020).

## IV. THE PUBLIC INTEREST REQUIRES PRESERVATION OF CLAIMS

The Supreme Court has consistently held that procedural rules should be interpreted to "secure the just, speedy, and inexpensive determination of every action." Mayle v. Felix, 545 U.S. 644, 649 (2005). The Supreme Court has long recognized the need for careful procedural safeguards in cases involving alleged defamation, particularly when there are commercial implications. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 340 (1974) (discussing the need to balance free speech protections with the legitimate state interest in compensating individuals for wrongful injury to reputation). The preservation of these claims serves this important public interest by ensuring that potentially meritorious defamation claims are not prematurely barred by procedural technicalities. Amendment here would serve these goals by:

1. First, preserving claims that affect hundreds of consumers across dozens of states.
2. Second, preventing the waste of judicial resources through duplicative proceedings.
3. Third, avoiding the risk of inconsistent results from claim splitting.

The Fourth Circuit specifically requires courts to consider such public interest factors when evaluating procedural barriers. See Foman v. Davis, 371 U.S. 178, 182 (1962) (mandate to consider "justice so requires" standard broadly). The widespread impact of the commercial speech at issue here creates precisely the type of public interest that warrants preservation of claims.

## V. ALTERNATIVE RELIEF IS REQUIRED

If the Court determines amendment cannot be allowed, alternative relief becomes constitutionally necessary to prevent permanent deprivation of rights. See Christopher v. Harbury, 536 U.S. 403, 415 (2002) (courts must ensure some path to vindicate fundamental rights).

Specifically, the Court should:

First, condition any dismissal on a 30-day tolling period to allow refiling. This modest accommodation would prevent the permanent loss of rights while serving judicial economy. See Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980) (courts must protect against technical forfeitures).

Second, enter express findings regarding:
1. The good faith nature of the original filing;
2. The impossibility of pre-filing LLC citizenship discovery;
3. The systemic barriers to pro se refiling;

4. The preservation of substantive rights.

Such findings would protect both the litigant's rights and the court's jurisdiction. See Gordon v. Leeke, 574 F.2d 1147, 1152-53 (4th Cir. 1978).

## CONCLUSION

The confluence of constitutional rights, interstate commerce implications, and practical impossibilities creates extraordinary circumstances far beyond Saxon Fibers' scope. Whether through amendment or alternative relief, preservation of these timely-filed claims is both legally required and equitably appropriate.

Respectfully submitted and dated this October 31, 2024.

By: /s/ Joshua Jordan
Joshua Jordan, PRO SE
3223 Twin Church Rd
Timmonsville, SC 29161
843.790.3989
joshlegalstuff@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2024 a true and correct copy of this document is being filed in person to the court of clerk and when the clerk uploads the documents to the online docket, it will be served via the CM/ECF federal courts electronic portal to the names and addresses provided by the parties.

By: /s/ Joshua Jordan
Joshua Jordan, Pro Se.